## Staunton

### SCOTT FUNERAL HOME, INCORPORATED v. FIRST NATIONAL BANK OF DANVILLE, ADMINISTRATOR, ETC.

September 4, 1970.

Record No. 7067.

Present, All the Justices.

*Robert W. Steele* (D.C.) (*W. Carrington Thompson; Norman M. Garland* (D.C.); *Howrey, Simon, Baker & Murchison* (D.C.), on brief), for appellant.

*Coleman B. Yeatts; Jesse W. Overbey*, for appellee.

SNEAD, C. J., delivered the opinion of the court.

The First National Bank of Danville, Administrator c.t.a. of the Estate of Ray M. Harris, herein referred to as bank, filed a petition in the court below alleging that certain charges ($6,301.46) made by Scott Funeral Home, Incorporated, for funeral services rendered the decedent appeared "to be unusually high". The petitioner requested that the court determine the reasonableness of the bill and direct petitioner to pay the charges or so much thereof as the court "might deem to be right and proper". By a decree entered December 16,

1967, the trial court determined that "under the facts and circumstances of this particular case the sum of $4,265.46 including sales tax, is authorized, proper and reasonable", and directed the administrator to pay that amount "which shall be in full and complete settlement for services rendered". We granted Scott Funeral Home an appeal from this decree.

The dominant question involved in this appeal is whether the trial court applied the proper criteria for determining the reasonableness of the funeral expenses.

On the morning of February 10, 1967 Ray M. Harris, unmarried and age 65, died testate in Chatham, Virginia, leaving a solvent estate valued in excess of $300,000. He was a person who lived exceptionally well, enjoyed a reputation for desiring only the best in life and did not hesitate to spend whatever was necessary to acquire it. The decedent owned an airplane and expensive automobiles during his lifetime. He was regarded as one of the community's leading citizens, and it was said that no one in Chatham "ever lived in greater style."

Upon his death, Harris's remains were removed to Scott Funeral Home, Incorporated. Kenneth P. Scott, president of the company, immediately sought to locate the next of kin and notify them of Harris's death. During the day he contacted Mrs. Clyde M. Harris, wife of a brother of the deceased, in Gainesville, Georgia. Mrs. Harris told Scott that she was not sure if any of the relatives would be able to come to Chatham, and she directed Scott to place the remains in "the best casket available." Scott advised Mrs. Harris that it would be preferable if some of the relatives would come to Chatham and make the necessary arrangements. Later, Mrs. Harris informed Scott that she and her husband along with decedent's half-brother, Harold Harris, and his wife had decided to make the trip.

After arriving in Chatham the next day, February 11, the Harrises met with Scott and W. E. Allen in the decedent's office. Allen had located decedent's holographic will and it was read to the group. It provided, among other bequests, a gift of $1,000 to each of his brothers and sisters living at the time of his death. The bulk of decedent's estate was left to charity. Nothing was said in the will about funeral arrangements except that decedent desired to be buried in "Chatham new cemetery." Under the terms of the will Allen was named "administrator" of the estate.

The Harrises and Scott then proceeded to the funeral home to make arrangements for the burial. Allen agreed to join them there later in the morning. After reaching a decision on the time and place of the funeral, Scott informed the Harrises of the styles and quality of available caskets. They then went into the selection room where 18 different caskets were on display. The price of each casket was clearly indicated and the costs ranged from $235 to $4,186. Without any solicitation or suggestion on the part of Scott, the family selected a solid bronze casket priced at $4,186. Scott then inquired if they wanted a vault and they said that they did. However, not being satisfied with any of those kept in stock, the Harrises selected from a catalogue a solid copper vault which cost $2,050. Scott then prepared a memorandum setting forth the costs of the funeral with "particularity" and gave it to the family.

Shortly thereafter, Allen arrived at the funeral home and conferred with the Harrises about funeral arrangements and matters pertaining to the estate. Scott advised Allen of the type of casket and vault selected by the family and Allen was aware of their total approximate cost. Allen voiced no objection at any time to the selections made, and the arrangements appeared to him "to be entirely satisfactory."

The decedent's funeral was held on February 12. Thereafter, for reasons unexplained, Allen declined to serve as executor of the estate and the First National Bank of Danville was appointed administrator c.t.a. by the court.

In due course Scott Funeral Home submitted its bill for the total sum of $6,611.07, including $65.46 sales tax, to the bank as administrator for payment. Of this amount $309.61 was for certain cash disbursements which was paid. The bank, however, declined to pay the balance of $6,301.46 until the court had determined the reasonableness of the charges.

"In the absence of (1) either a provision in a will, or (2) legislation modifying or abrogating rather than implementing the principle, it is a well-settled general rule that the amount of funeral expenses which may properly be charged against a decedent's estate must be reasonable." Annot., 4 A.L.R.2d 995, 998-99 (1949), and cases there cited.

In determining the reasonableness of funeral expenses, each case must rest on its own particular facts and circumstances. However, in arriving at what is reasonable the prevailing rule is that the amount

of funeral expenses allowable against a decedent's estate "must correspond with decedent's station in life and matters in relation thereto, and with the value of the estate." 4 A.L.R.2d at 1002. See also *Cole v. Enterprise Funeral Home*, 228 Miss. 652, 658, 89 So.2d 699, 701 (1956); *Quinn v. Koeck*, 95 N.J.S. 467, 470, 231 A.2d 822, 824 (1967); *In Re Dennis' Estate*, 110 C.A.2d 667, 670, 243 P.2d 579, 581 (1952); *In Re Tucker's Estate*, 200 Okla. 548, 550, 197 P.2d 971, 973 (1948).

In its written opinion the trial court acknowledged these basic principles, but concluded that only $4,200 plus sales tax was a reasonable funeral expense for decedent. In arriving at this conclusion the court relied on an exhibit, introduced by the bank, showing the funeral expenses incurred within recent years by nine other estates administered by the bank, ranging in value from approximately $58,000 to $3,000,000. The average amount of funeral expense incurred by these estates was $2,224.23, the largest estate incurring the greatest expense—$3,703. There was no evidence introduced indicating the manner in which any of the persons listed in the exhibit lived or their station in life in the community.

Although the court stated that expenses incurred by other estates is not the sole criterion, it also stated, in reaching the conclusion that the expense was unreasonable, "the expense undertaken here is not commensurate with the standard of reasonable burial expenses established by local and contemporary usage." But in the absence of a claim that the charges for the supplies furnished and services rendered are excessive, local and contemporary usage is not a material factor in determining whether the charges made to a particular decedent's estate are reasonable. We hold that the trial court erred when it applied such a standard as a criterion for reasonable funeral expenses in this case.

In the case at bar none of the beneficiaries has objected to the charges made by the funeral home. No claim has been made that excessive charges were made for the supplies furnished and services rendered. There is no allegation of fraud or overreaching on the part of Scott. He dealt with the next of kin and Allen, the named "administrator", in good faith and they were satisfied with the funeral arrangements.

As has been stated, the decedent was a person who lived exceptionally well and enjoyed a reputation for desiring only the best in life. He did not hesitate to spend whatever was necessary to acquire

the best. He owned an airplane and expensive automobiles during his lifetime, and was regarded as one of the leading citizens in the community. The statement, referred to by the trial court in its opinion, that no one in Chatham "ever lived in greater style" is certainly indicative of decedent's station in life and the manner in which he lived.

The decedent's estate was solvent and valued in excess of $300,000. The funeral expenses in dispute amounted to $6,301.46, which represents approximately 2% of the estate. Under the facts and circumstances of this case, we find, as a matter of law, that this amount is not a disproportionate share of the value of the estate and fairly reflects decedent's station in life. Our conclusion is the disputed funeral charges are reasonable.

Accordingly, the decree appealed from is reversed and judgment is here entered directing The First National Bank of Danville, Administrator c.t.a. of the Estate of Ray M. Harris, to pay Scott Funeral Home, Incorporated the contested sum of $6,301.46. From this amount should be deducted any sum heretofore paid pursuant to a stipulation filed by counsel on January 9, 1968, which authorized Scott Funeral Home to negotiate a draft in the amount awarded by the trial court ($4,265.46).

*Reversed and final decree.*